**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LARRY KLAYMAN, *et al.,* | |
| Plaintiffs, | |
| v. | |
| BARACK OBAMA, President of the United States, et al*.,* | Case No: 1:13-cv-00851-RJL |
| Defendants. | |
| | |
| LARRY KLAYMAN, *et al.,* | |
| Plaintiffs, | |
| v. | |
| BARACK OBAMA, President of the United States, et al*.,* | Case No: 1:13-cv-00881-RJL |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO GOVERNMENT DEFENDANTS'**
**PARTIAL MOTION TO DISMISS**

Plaintiffs hereby file this opposition to Government Defendants' Partial Motion to Dismiss pursuant to Rule 12 (b)(1) of the Federal Rules of Civil Procedure ("FRCP") for lack of subject matter jurisdiction, and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Government Defendants, Barack Hussein Obama, II, Eric Himpton Holder, Jr., Keith B. Alexander, Judge Roger Vinson, the National Security Agency ("NSA"), and the U.S. Department of Justice, have moved to dismiss the counts concerning the Administrative Procedures Act ("APA"), the Stored Communications Act ("SCA") and the common law torts. Plaintiffs, with full reservations of all rights, hereby withdraw their APA and SCA claims, and to streamline this case further, Plaintiffs will file an administrative federal tort claims action. In doing so, Plaintiffs will

hereby remove these common law tort claims from these cases without prejudice. However, the constitutional claims will continue to be vigorously pursued.

## STATEMENT OF FACTS

On June 6, 2013, Plaintiffs brought the first of two related lawsuits, *Klayman v. Obama*, Civil Action No. 13-0851 (*Klayman I*), and *Klayman v. Obama*, Civil Action No. 13-0881 (*Klayman II*) challenging the constitutionality and statutory authorization of certain intelligence-gathering tactics by the U.S. Government relating to the wholesale collection of the phone, email, Internet and social media metadata of virtually all U.S. citizens. The two lawsuits arose from uncontroverted public revelations over the past several months that the federal government, through the NSA, and with the participation of certain telecommunication and internet companies, have secretly conducted overreaching and unlawful surveillance of American citizens within the United States, while gathering and collecting certain highly-revealing data about individuals' telephone, email, social media and Internet activity.

Specifically, Plaintiffs in *Klayman II* challenged the Government's secret and expansive government scheme to intercept and analyze vast quantities of communications from Internet and electronic service providers, through highly classified surveillance programs, such as "PRISM." *Klayman II* Am. Compl. 3-6. PRISM is an internal government computer system implemented under Section 702 of the Foreign Intelligence Surveillance Act ("FISA") and is used to spy on, gather, and access domestic and foreign intelligence collected from the Internet and other electronic service providers. *Klayman II* Am. Compl. 2, 4-5. While known perjurers such as the Director of National Intelligence, James Clapper ("Clapper"), have represented that the program ceased in 2011, given the history and pattern of lying by Clapper and the Obama administration's NSA, these representations cannot be believed. Indeed such claims are not only questionable but are also directly at odds with what whistleblower Edward Snowden has revealed. Thus far, all of Snowden's revelations have been confirmed by the Government Defendants, causing even Defendant President Barack Obama to concede and recommend, under intense pressure, NSA surveillance reform, however disingenuous

and unbelievable especially in light of Obama's own history of lying to the American people over Internal Revenue Service abuse, Obamacare, Benghazi and a host of other "phony scandals" – scandals which have paralyzed and threaten his tenure in office. As such, at a minimum, there must be discovery to determine the truth and dismissal is not appropriate.

## ARGUMENT

Under Rule 12(b)(6), the court must deny Defendants' Motion to Dismiss unless it appears to a certainty that Plaintiffs would be entitled to no relief under any state of facts which could be proved to support a claim. *Banco Continental v. Curtiss National Bank of Miami Springs,* 406 F.2d 510, 514 (5th Cir.1969); *see also Gibson v. United States*, 781 F. 2d 1334, 1337 (9th Cir. 1986). In considering a motion to dismiss, all allegations of material facts alleged in the complaint must be taken as true and construed in the light most favorable to the nonmoving party. *Allman v. Phillip Morris, Inc.,* 865 F. Supp. 665, 667 (S.D.Cal.1994), citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

I.      **GOVERNMENT DEFENDANTS' REQUEST TO DISMISS ANY CLAIMS PREDICATED UPON THE COLLECTION OF INTERNET DATA CONTENT OF PLAINTIFFS' COMMUNICATIONS PURSUANT TO SECTION 702 MUST BE DENIED.**

Government Defendants disingenuously seek to dismiss any claims predicated on Plaintiffs' challenge to the collection of their Internet data content under the PRISM program which occurs pursuant to Section 702 of FISA (50 U.S.C. § 1881a). This program authorizes the Government Defendants to target the communications of non-U.S. persons (with U.S. persons), reasonably believed to be located outside the United States, to acquire foreign intelligence information with regard to terrorism and terrorists.

A.   **Plaintiffs Sufficiently Pled Facts to Show that the NSA Has Targeted and Imminently Will Target Plaintiffs' Communications Under Section 702 and Therefore Have Standing.**

In Government Defendants' Partial Motion to Dismiss, they claim "Plaintiffs have not alleged sufficient facts to show that the NSA has targeted (or imminently will target) their communications for such content collection, nor have they even alleged that they communicate with anyone reasonably believed to be outside the United States. Gov't Defs' Mot. To Dismiss. at 9 (Gov't Mo. To Dis.) Government Defendants claims are wrong. At paragraphs 55 and 56 of Plaintiffs' Amended Complaint, Plaintiffs pled that they have engaged in calls and other communications overseas and that these communications have been illegally monitored by the Government Defendants. Specifically, Plaintiffs alleged "[Government Defendants], under the authorization of President Obama, continue[] to engage in a systematic program of warrantless eavesdropping upon phone and email communications of hundreds of millions of individuals, including American citizens and permanent legal residents, both within and outside of the U.S." Am. Compl. (*Klayman II*). Plaintiffs continue: "Such intrusive and illegal surveillance have [sic] directly impacted each and every Plaintiff." *Id*. In addition, Plaintiffs are contemporaneously filing a motion for leave to amend the Amended Complaint to make these allegations even clearer. See Motion to Amend and the Second Amended Complaint, which sets forth, by way of just one example, Plaintiffs' overseas contacts and communications. For instance, at paragraphs 11 to 16 of the Second Amended Complaint, Plaintiff Larry Klayman alleges:

> Plaintiff Klayman frequents and routinely telephones and emails individuals and high-ranking government officials in Israel, a high-conflict area where the threat of terrorism is always present. U.S. and Israeli intelligence agencies are constantly monitoring the telecommunications in Israel in order to prevent any future attacks by terrorists . . .

While in Israel, most recently in 2009, 2010, and 2012, Klayman met with the Press Secretary for Prime Minister Benjamin Netanyahu, Mr. Mark Regev, as well as Daniel B. Shapiro, who is now the U.S. Ambassador to the United States to the State of Israel.  Plaintiff Klayman also communicates with Mr. Regev internationally via telephone and email. In 2012 Plaintiff Klayman was in Jerusalem and Tel Aviv during the war with Hamas and experienced rocket attacks while he was in Tel Aviv.

Plaintiff Klayman also met with Ron Nachman who was mayor of the city of Ariel, Israel until his death in 2013.  Plaintiff Klayman remained in telephone and email communication with Mr. Nachman and his aides after his visit to Israel. Importantly, Ariel is located in Judea, which Palestinians and other Arabs falsely call "Occupied Territory." Judea is a breeding ground for terrorists.

Plaintiff Klayman has also telephoned and emailed  Danny Danon, a member of Israel's Knesset (legislative body), who is currently serving as    the Deputy    Minister    of    Defense in    the Cabinet of Prime Minister Benjamin Netanyahu.

In addition, Plaintiff has been in telephone and email contact with Aaron Klein in Israel, an investigative reporter who hosts a radio show on WABC in New York, which originates in Israel. In fact, Klayman was recently interviewed by Aaron Klein regarding the NSA, during which time the radio show experienced what the host called "a tech meltdown." Specifically, software used by the radio station "dropped" Plaintiff Klayman from the phone line and listeners who had called in to ask Klayman questions were cut out in mid-sentence and it is clear that the NSA was attempting to harass him, Aaron Klein and anyone connected to this show, which has been critical of the Defendants, including President Obama.

Plaintiff Klayman also telephoned and emailed individuals within Spain in preparation for his visit to Spain in July of 2012 where he met with prominent human rights lawyers to discuss bringing an action against the Islamic Republic of Iran and its officials for violations of human rights.  Plaintiff continued communication with those he met in Spain following his visit.  Prior to this, Plaintiff Klayman telephoned and emailed individuals in India in preparation for his trip to India in 2007, where he served process on the Prime Minister of India. Similarly, in May of 2012 Plaintiff Klayman traveled to the headquarters of the Organization of the Petroleum Exporting Countries ("OPEC") located in Vienna, Austria in order to personally serve them with process and has made calls to Austria in this regard. Among OPEC's members is the Islamic Republic of Iran, and other Islamic

states, which further, harbor and/or have close ties to terrorism. In fact, the oil revenues of OPEC help fund terrorism and terrorists bent on destroying the United States, its ally Israel, and other western and European interests. Plaintiff Klayman also routinely sends and receives emails and telephone communications to and from Italy, France, Great Britain, Germany, Belgium and other European Union nations which have very large Muslim populations and where terrorist cells are located and thus where terrorist attacks have been perpetrated resulting in numerous deaths and maimed persons.

Plaintiffs Second Amend. Compl. at 7-8.

Plaintiffs are not only prime targets subject to the NSA's illegal, overly-broad surveillance but also Plaintiffs have had and, in fact, continue to have substantial communications with significant people located outside of the United States. The NSA is targeting these communications under its illegal and unconstitutional surveillance programs, which until recently, thanks to repeated lying and deceit, have been kept secret from the Plaintiffs and the American people as a whole.

Thus, Plaintiffs, especially Plaintiff Klayman, have been targeted by the NSA and the NSA targets persons such as Plaintiffs under Section 702, particularly as Plaintiffs are in contact with persons in key countries which further and harbor terrorists and terrorist cells, or those fighting this terrorism, as set forth in the Second Amended Complaint.

**B.     It Is Not Speculative Whether the Government Defendants Would Seek to Target, Target, and Acquire Their Communications.**

The revelations of whistleblower Edward Snowden, which have not been refuted by the Government Defendants, show that the NSA PRISM program has been and is being used to illegally spy on all Americans regardless of their having any contact with terrorism or terrorists overseas.

With regard to the Plaintiffs, as set forth in the new Second Amended Complaint, all of the Plaintiffs have routinely made calls overseas, such that their calls fall within the ambit of

Section 702 under the PRISM program, and therefore the contents of Plaintiffs Internet data has been and continues to be targeted. With regard to Plaintiff Klayman in particular, as an international lawyer and chairman and general counsel previously of Judicial Watch and now Freedom Watch he has and continues to not only travel overseas on business to such countries as Israel, Morocco, Italy, Great Britain, Austria, Belgium, France, Spain, India and other high terrorist risk areas. In addition, Plaintiff Klayman also makes calls to and from these nations. And, Plaintiff Klayman has sued and pursues terrorists such as the Islamic regime in Iran. Accordingly, he is part of a locus of persons who would be surveilled by the NSA's PRISM program.

Plaintiffs Charles Strange and Mary Ann Strange, whose son was killed by the Taliban during a mission called Extortion 17, are also among the persons who would be and are surveilled. The Strange's son, Michael, was not coincidentally an NSA cryptologist assigned to Navy SEAL Team VI, the special ops force that purportedly killed master terrorist Osama Bin Laden. As set forth in sworn affidavits in the court record and also set forth in the Amended Complaint, the Strange Plaintiffs have received "strange" calls and texts from overseas, and had their computers infiltrated.  Finally, the other two Plaintiffs, private investigators Michael Ferrari and Mathew Garrison, also routinely make and receive calls and other communications to and from countries outside of the United States. Accordingly, as was true of the metadata relevant to *Klayman I* where this Court found standing for the Plaintiffs, standing also exists here.

II.      **GOVERNMENT DEFENDANTS' REQUEST TO DISMISS ANY CLAIMS PREDICATED UPON THE BULK COLLECTION OF THE INTERNET METADATA OF PLAINTIFFS' COMMUNICATIONS PURSUANT TO SECTION 215 MUST BE DENIED.**

Government Defendants seek to dismiss claims predicated on Plaintiffs' challenge to the collection of their bulk collection of Internet metadata occurring pursuant to Section 215 (50

U.S.C. § 1861) simply because the Government Defendants represent, without any proof other than their dubious representations which cannot be believed, that the program ceased in 2011. *See* Govt. Defs.' Opp'n to Pls.' Mot. For Prelim. Inj. (Govt.'s Opp'n).

A.   **Government Defendants' Voluntary Cessation of the Alleged Illegal Conduct Does not Deprive this Court of its Power to Determine the Legality of the Practices.**

The Government Defendants have hung their hat on the slender stand of mootness, claiming that their decision to voluntarily cease the offensive conduct in 2011 is no longer capable of adjudication in this Court. This Court must reject Government Defendants' argument. A defendant that simply ceases illegal conduct cannot avoid the consequences for it's past, present or future conduct. This is axiomatic and black letter law.

The Government Defendants' concede that "at one time [the Government] acquired bulk Internet metadata . . . pursuant to FISA's pen/trap provision." Govt.'s Opp'n. at 15. "The data collected included certain routing, addressing, and signaling information such as 'to' and 'from' lines in an e-mail . . . and the date and time an e-mail [was] sent," but not the 'content of [an] e-mail [or] the 'subject' line. NSA collected large amounts of this transactional information from certain telecommunications service providers and analyzed it to obtain foreign intelligence information." *Id.* According to Government Defendants, "This program of bulk Internet metadata collection was terminated in 2011, for operational and resource reasons." *Id.* at 16.

The Supreme Court has stated "[i]t is well settled that "'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" for "if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *Friends of the Earth v. Laidlaw Envt'l Services, Inc.*, 528 U.S. 167, 189 (2000) (*quoting City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)); *see United*

*States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (holding that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case). When the basis of mootness is voluntary cessation, "[a] case *might* become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 191 (emphasis added). Precisely because the voluntary cessation of allegedly wrongful activity can be undone by an equally voluntary decision to resume the conduct, courts have consistently held that "[t]he heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968); *see Laidlaw*, 528 U.S. at 189 (*quoting Concentrated Phosphate*).

Here, it is more than a stretch to claim that government officials who did not follow the law before will suddenly follow the law now – especially when they refuse to acknowledge that their previous course of conduct was wrongful and consist of "certified" perjurers before Congress and the court.

In cases involving cessation of challenged conduct by Government officials, courts generally require that the cessation of the challenged conduct be accompanied by circumstances indicating the change is a genuine act of self-correction in order to find that the issue does not require adjudication. *See Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991); *see also* 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3533.7 (2d ed. 2004) (noting that while "[c]ourts are more apt to trust public officials than private defendants to desist from future violations . . . the tendency to trust public officials is not complete . . . nor is it invoked automatically.") Moreover, in *Armster*, the hold held that where the Justice Department did not concede that challenged conduct was illegal, bare assertion that it

would not recur was insufficient to establish mootness because "[i]t has been long recognized that the likelihood of recurrence of challenged activity is more substantial when the cessation is not based on a recognition of the initial illegality of that conduct." *Armster v. United States District Court for the Central District of California*, 806 F.2d 1347, 1359 (9th Cir. 1986); ("It has been long recognized that the likelihood of recurrence of challenged activity is more substantial when the cessation is not based on a recognition of the initial illegality of that conduct."). *Id.*

Thus, in light of well-established principles, the Government Defendants' argument that collection under the PRISM "was discontinued in 2011", a mere three years ago, holds no weight. Government Defendants' can easily return to their old practice of collecting metadata – if Government Defendants' ceased the activity at all – through the PRISM program and other similar programs.

**B.      Government Defendants' Representation That the Bulk Collection of Metadata Pursuant to Section 215 Was Discontinued in 2011 Cannot Be Believed and Must Be Subject to Discovery.**

Moreover, and in this context, the claims by Government Defendants that they ceased the offending conduct in 2011 simply cannot be believed in light their documented pattern of lying on this record and to the public. Had whistleblower Edward Snowden not come forward and revealed the truth, the Government Defendants would have buried their secret, unconstitutional conduct and gone merrily on their way in their "almost Orwellian" police state. The power of the Government Defendants, through their NSA, is frightening and subversive. This cannot continue.

## <u>CONCLUSION</u>

For the foregoing reasons, the Government Defendant's Partial Motion to Dismiss must be denied. Not only is there much more than a colorable showing that the Plaintiffs fall

within the scope of Defendants' illegal and unconstitutional surveillance programs by virtue of

their domestic and foreign communications, and thus have standing to sue, but the NSA through

such compromised and corrupt officials such as Director of National Intelligence James Clapper

have repeatedly lied to courts, Congress and the American people about these programs. Thus,

when the Government Defendants claim, without support, that they have terminated PRISM,

they cannot and should not be believed. And, even if terminated, as the Supreme Court and other

precedent provide, this is not a valid legal reason to dismiss Plaintiffs' claims, as the illegal and

unconstitutional conduct can and is likely to be resumed at any time after a dismissal, when the

Government Defendants think they are "home free."

This case must go forward with discovery and trial and this Court, as the last line of

defense for the American people, is to be commended for standing tall and enforcing the law to

stop and remedy the Government Defendants' "almost-Orwellian" tyranny.

Dated: January 30, 2014

Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800


Email: leklayman@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January, 2014 a true and correct copy of the
foregoing Opposition to Government Defendants' Partial Motion to Dismiss (Civil Action Nos.
13-cv-851 and 13-cv- 881) was submitted electronically to the District Court for the District of
Columbia and served via CM/ECF upon the following:

James J. Gilligan
Special Litigation Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
 (202) 514-3358
Email: James.Gilligan@usdoj.gov

Randolph D. Moss
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6640
Fax: (202) 663-6363
Email: randolph.moss@wilmerhale.com


Attorneys for Defendants.

                              Respectfully submitted,
                               /s/ *Larry Klayman*
                              Larry Klayman, Esq.
                              D.C. Bar No. 334581
                              Klayman Law Firm
                              2020 Pennsylvania Ave. NW, Suite 345
                              Washington, DC 20006
                              Tel: (310) 595-0800