## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                            )
LARRY KLAYMAN, *et al.*,                    )
                                            )
                    Plaintiffs,             )
                                            )
            v.                              )        No. 1:13-cv-00851 (RJL)
                                            )        No. 1:13-cv-00881 (RJL)
DONALD J. TRUMP, President of the           )
    United States, *et al.*,                )
                                            )
                    Defendants.             )
_____     )

### REPLY BRIEF IN SUPPORT OF THE GOVERNMENT DEFENDANTS'
### MOTION TO DISMISS *KLAYMAN I* AND *KLAYMAN II*
### FOR LACK OF SUBJECT MATTER JURISDICTION

Dated:  February 10, 2017

CHAD A. READLER
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
Senior Counsel

JULIA A. BERMAN
TIMOTHY A. JOHNSON
CAROLINE J. ANDERSON
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6102
Washington, D.C.  20044
Phone:  (202) 514-3358
Fax:      (202) 616-8470
E-mail:  james.gilligan@usdoj.gov

*Counsel for the Government Defendants*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

I.      PLAINTIFFS' CHALLENGE TO THE DISCONTINUED BULK TELEPHONY
METADATA PROGRAM PRESENTS NO CASE OR CONTROVERSY ....................... 3

        A.     Plaintiffs' Claims for Declaratory and Prospective Injunctive Relief .................... 3

        B.     Plaintiffs' Expungement Claim ................................................................................ 9

        C.     Plaintiffs Are Not Entitled to Jurisdictional Discovery ......................................... 12

II.     PLAINTIFFS LACK STANDING TO CHALLENGE THE NSA'S PRIOR
BULK COLLECTION OF INTERNET METADATA .................................................... 15

III.    PLAINTIFFS LACK STANDING TO CHALLENGE PRISM COLLECTION ............. 19

IV.    SOVEREIGN IMMUNITY BARS PLAINTIFFS' DAMAGES CLAIMS
AGAINST THE GOVERNMENT ................................................................................... 23

CONCLUSION ....................................................................................................................... 24

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*ABA v. FTC*,
  636 F.3d 641 (D.C. Cir. 2011) ............................................................................ 3, 4

*ACLU v. Brown*,
  619 F.2d 1170 (7th Cir. 1980) ............................................................................... 15

*In re Aiken Cty.*,
  645 F.3d 428 (D.C. Cir. 2011) ............................................................................... 10

*Al-Haramain Islamic Found., Inc. v. Bush*,
  507 F.3d 1190 (9th Cir. 2007) ............................................................................... 14

*In re Al-Nashiri*,
  791 F.3d 71 (D.C. Cir. 2015) ................................................................................. 11

*In re Application of the FBI*,
  2009 WL 9150914 (F.I.S.C. Sept. 3, 2009) ............................................................ 7

*American Petroleum Inst. v. EPA*
  683 F.3d 382, 386 (D.C. Cir. 2012) ...................................................................... 10

*In re Application of the FBI*,
  2009 WL 9150914 (F.I.S.C. Sept. 3, 2009) ............................................................ 7

*Aref v. Lynch*,
  833 F.3d 242 (D.C. Cir. 2016) ................................................................................. 4

*Atlantigas Corp. v. Nisource, Inc.*,
  290 F. Supp. 2d 34 (D.D.C. 2003) .............................................................. 13, 14, 17

*Baptist Mem. Hosp. v. Johnson*,
  603 F. Supp. 2d 40 (D.D.C. 2009) .................................................................. 13, 15

*Bowles v. Russell*,
  551 U.S. 205 (2007) ................................................................................................ 11

*Calvert v. United States*,
  662 F. Supp. 2d 27 (D.D.C. 2009) ......................................................................... 17

*Chamber of Commerce v. EPA*,
  642 F.3d 192 (D.C. Cir. 2010) ................................................................................. 3

*CIA v. Sims*,
  471 U.S. 159 (1985) ................................................................................................ 15

**PAGE(S)**

*Clapper v. Amnesty International, USA,*
   133 S. Ct. 1138 (2013) ................................................................................. *passim*

*Cohen v. Bd. of Trustees of the Univ. of the D.C.,*
   819 F.3d 476 (D.C. Cir. 2016) ................................................................................. 23

*Colwell v. HHS,*
   558 F.3d 1112 (9th Cir. 2009) ................................................................................. 17

*Ctr. for Law & Educ. v. Dep't of Educ.,*
   396 F.3d 1152 (D.C. Cir. 2005) ................................................................................. 6

*Duarte v. Nolan,*
   190 F. Supp. 3d 8 (D.D.C. 2016) ................................................................................. 12

*Electronic Frontier Found. v. Dep't of Justice,*
   2014 WL 3945646 (N.D. Cal. Aug. 11 2014) ........................................................ 15

*Flores v. Dist. of Columbia,*
   437 F. Supp. 2d 22 (D.D.C. 2006) ................................................................................. 20

*FC Invest. Group LC v. IFX Markets, Ltd.,*
   529 F.3d 1087 (D.C. Cir. 2008) ........................................................................ 12, 17

*Halkin v. Helms,*
   598 F.2d 1 (D.C. Cir. 1979) ........................................................................ 14, 15

*Halkin v. Helms,*
   690 F.2d 977 (D.C. Cir. 1982) ................................................................................. 14

*Harris v. Koenig,*
   722 F. Supp. 2d 44 (D.D.C. 2010) ................................................................................. 16

*Klayman v. Obama,*
   142 F. Supp. 3d 172 (D.D.C. 2015) ........................................................... 4, 9, 14

*Klayman v. Obama,*
   957 F. Supp. 2d 1 (D.D.C. 2013) ................................................................. *passim*

*Larson v. Dep't of State,*
   565 F.3d 857 (D.C. Cir. 2009) ................................................................................. 14

*Linden v. NSA,*
   94 F.3d 693 (D.C. Cir. 1996) ................................................................................. 14

iii

PAGE(S)

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
    485 U.S. 439 (1988) ................................................................................................ 11

*Mason v. Geithner*,
    811 F. Supp. 2d 128 (D.D.C. 2011) ...................................................................... 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................ 16

*Menominee Indian Tribe of Wisc. v. United States*,
    614 F.3d 519 (D.C. Cir. 2010) ............................................................................... 11

*Mohamed v. Jeppesen Dataplan, Inc.*,
    614 F.3d 1070 (9th Cir. 2010) ...............................................................................14

*Mountain States Legal Found. v. Glickman*,
    92 F.3d 1228 (D.C. Cir. 1996) ................................................................................. 6

*In re Napster, Inc. Copyright Litig.*,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ................................................................ 12

*In re Navy Chaplaincy*,
    850 F. Supp. 2d 86 (D.D.C. 2012) .......................................................................... 7

*Nat'l Black Police Ass'n v. Dist. of Columbia*,
    108 F.3d 346 (D.C. Cir. 1997) ................................................................................. 4

*NBC-USA Housing, Inc., Twenty-Six v. Donovan*,
    741 F. Supp. 2d 55 (D.D.C. 2010) ........................................................................ 12

*NRDC v. EPA*,
    464 F.3d 1 (D.C. Cir. 2006) ..................................................................................... 6

*Obama v. Klayman*,
    800 F.3d 559 (D.C. Cir. 2015) ................................................................... 6, 18, 21

*Orellana v. CropLife, Int'l*,
    740 F. Supp. 2d 33 (D.D.C. 2010) ........................................................................ 12

*In re Papst Licensing, GmbH & Co. KG Litig.*,
    590 F. Supp. 2d 94 (D.D.C. 2008) ........................................................................ 12

*In re Prod. of Tangible Things from [Redacted]*,
    2009 WL 9150913 (F.I.S.C. Mar. 2, 2009) ............................................................ 7

**PAGE(S)**

*[Redacted]*,
    2011 WL 10945618 (F.I.S.C. Oct. 3, 2011) ................................................................ 7

*[Redacted]*,
    2011 WL 10947772 (F.I.S.C. Nov. 30, 2011) ........................................................... 7

*Salisbury v. United States*,
    690 F.2d 966 (D.C. Cir. 1982) ................................................................................ 15

*Shaheen v. Smith*,
    994 F. Supp. 2d 77 (D.D.C. 2013) ......................................................................... 13

*In re Swine Flu Immunization Prods. Liab. Litig.*,
    880 F.2d 1439 (D.C. Cir. 1989) .............................................................................. 16

*Texas v. United States*,
    523 U.S. 296 (1998) ................................................................................................ 10

*United States v. Mohamud*,
    843 F.3d 420 (9th Cir. 2016) ............................................................................ 22, 23

*Williams v. Lew*,
    819 F.3d 466 (D.C. Cir. 2016) .................................................................................. 6

*Williams v. Romarm, SA*,
    756 F.3d 777 (D.C. Cir. 2014) ................................................................................ 12

*Winston & Strawn, LLP v. McLean*,
    843 F.3d 503 (D.C. Cir. 2016) ................................................................................ 23

## STATUTES

50 U.S.C. § 1842 ............................................................................................................ 18, 19

50 U.S.C. § 1861 .......................................................................................................... 4, 5, 9

50 U.S.C. § 1881a ................................................................................................................ 19

50 U.S.C. § 3605 ................................................................................................................. 14

USA FREEDOM Act, Pub. L. No. 114-23 § 201, 129 Stat. 268 ............................. 18, 19

**PAGE(S)**

**MISCELLANEOUS**

*In re Application of the FBI*, No. BR 14-01, Op. & Order (F.I.S.C. Mar. 21, 2014) .................... 8

*In re:  Application of the FBI*, ECF BR 14-01, Resp. of the U.S. to the Court's
   Mar. 21, 2014, Op. & Order (Apr. 2, 2014)............................................................................. 8

## INTRODUCTION

The Section 215[1] bulk telephony metadata program was terminated by statute in November 2015, and future bulk collection under the statute is prohibited.  The NSA retains bulk data accumulated under the program solely to comply with evidence-preservation obligations in *Klayman I* and *II*, and other cases; it is required by FISC Order to destroy the bulk data once its applicable preservation obligations are lifted; and it is prohibited in the meantime, by the same FISC Order, from accessing the bulk data except to maintain the data's integrity.  The NSA's bulk collection of Internet metadata, previously conducted under FISA Section 402, was terminated in December 2011, more than one year before it was challenged by the Plaintiffs in *Klayman II*, and the bulk data accumulated under the program were destroyed at that time.  Accordingly, for reasons of mootness, the absence of a present or certainly impending injury traceable to the Government's conduct, or a combination of the two, Plaintiffs' claims against the Government Defendants[2] purporting to challenge these now terminated intelligence programs present no case or controversy within the Court's Article III jurisdiction, and must be dismissed.

---

[1]  Specialized terms used but not otherwise defined herein shall have the same meaning as in the Memorandum of Points and Authorities in Support of the Government Defendants' Motion To Dismiss *Klayman I* and *Klayman II* for Lack of Subject Matter Jurisdiction, *Klayman I* ECF No. 178-1 ("Gov't Defs.' Mem.").  Plaintiffs' Opposition to Government Defendants' Motion To Dismiss *Klayman I* and *Klayman II* for Lack of Subject Matter Jurisdiction, *Klayman I* ECF No. 182, is cited herein as "Pls.' Opp."

[2]  The Government Defendants are now Donald J. Trump, President of the United States; Jefferson B. Sessions, III, Attorney General of the United States; Adm. Michael S. Rogers, Director of the NSA; Michael S. Dempsey, Acting Director of National Intelligence ("DNI"); Mike Pompeo, Director of the CIA; and James B. Comey, Director of the FBI, insofar as they are sued in their official capacities, together with defendants NSA, the United States Department of Justice, the CIA, and the FBI.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, defendants Trump, Sessions, Dempsey, and Pompeo have been automatically substituted herein as defendants sued in their official capacities in lieu of former President Barack H. Obama, former Attorney General Loretta E. Lynch, former DNI James R. Clapper, and former CIA Director John O. Brennan, respectively.

Reduced to its essence, Plaintiffs' response is essentially two-fold, and unavailing.  First, Plaintiffs maintain that a Government "pattern and practice of deception and disregard for the law" in conducting intelligence programs creates a "reasonable probability," and "increased risk," that the Government will re-institute these programs and inflict the same injuries upon Plaintiffs that they allege occurred in the past.  As discussed below, Plaintiffs' accusations of Government deceit and deception are baseless, and supply no predicate, factually or legally, for an assertion of jurisdiction over their claims.  Second, Plaintiffs argue that prior to dismissal they are entitled to jurisdictional discovery as to whether the NSA collected information about their communications under the challenged bulk metadata programs.  But pursuit of the discovery they request would be pointless, because the jurisdictional defects in their claims would remain, even if it were shown that the NSA collected bulk metadata about their communications.  In any event the information they seek is absolutely protected from disclosure by statute and other law.

PRISM collection of online communications content remains an ongoing NSA intelligence-gathering activity, carried out under FISA Section 702.  The PRISM program is targeted, however, at the communications of certain non-U.S. persons located abroad, such as known or suspected agents of foreign terrorist organizations.  On the record here, Plaintiffs are no more able to demonstrate PRISM collection of their communications than were the plaintiffs who sought to mount a legal challenge to Section 702 surveillance in *Clapper v. Amnesty International, USA*, 133 S. Ct. 1138 (2013).  *Amnesty International* "dictate[s]" that Plaintiffs in this case lack Article III standing to challenge PRISM, as this Court previously held, *Klayman v. Obama*, 957 F. Supp. 2d 1, 8 n.6 (D.D.C. 2013), *vacated and remanded on other grounds by Obama v. Klayman*, 800 F.3d 559 (D.C. Cir. 2015), a conclusion only reinforced by Plaintiffs' reliance on the dissent in *Amnesty International* to support their standing arguments.

Accordingly, for the reasons discussed below and in the Government's opening brief, Plaintiffs' claims against the Government Defendants should be dismissed.

## ARGUMENT

## I.   PLAINTIFFS' CHALLENGE TO THE DISCONTINUED BULK TELEPHONY METADATA PROGRAM PRESENTS NO CASE OR CONTROVERSY.

### A.   Plaintiffs' Claims for Declaratory and Prospective Injunctive Relief

The statutorily mandated cessation of the Section 215 program has mooted Plaintiffs' claims for declaratory and prospective injunctive relief against the operation of that program, and for essentially the same reason, Plaintiffs also now lack standing to seek such relief.  *See* Gov't Defs.' Mem. at 21-26.  Plaintiffs resist those conclusions on the asserted grounds that the voluntary-cessation exception to the mootness doctrine applies here, *see* Pls.' Opp. at 12-15, and that bulk collection under Section 215 is reasonably probable to recur.  *See id.* at 16-18.  Neither of these arguments has merit, factually or legally.

**1.**       Plaintiffs' claims are moot because the challenged activities—the collection and queries of telephony metadata in bulk—are now prohibited by federal statute and the order of an Article III court, respectively.  *See* Gov't Defs.' Mem. at 21-23.  In this way, "events have so transpired" that a decision by this Court would "neither presently affect" Plaintiffs' rights nor "have a more-than-speculative chance of affecting them in the future."  *Chamber of Commerce v. EPA*, 642 F.3d 192, 210 (D.C. Cir. 2011).  These claims should therefore be dismissed as moot.

In response, Plaintiffs first argue that the voluntary-cessation exception to the mootness doctrine applies here such that their Section 215 claims continue to present a live case or controversy.  Pls.' Opp. at 12-15.  Under the voluntary-cessation exception a case is moot only "if there is no reasonable expectation that the alleged violation will recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *ABA v.*

*FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011).[3]  As an initial matter, however, the Government has already shown that this exception to the mootness doctrine does not apply where "intervening legislation," such as the USA FREEDOM Act of 2015, "nullifie[s]" the agency program.  In that circumstance, the cessation is "not voluntary" and so it does not come "within the compass of the voluntary cessation exception to mootness."  *ABA*, 636 F.3d at 648; *id.* at 643 ("It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending."); *see also* Gov't Defs.' Mem. at 24-25.

But even if the voluntary-cessation exception applied here, the Government would easily meet the burden of demonstrating that "there is no reasonable expectation" that the NSA would again collect telephony metadata in bulk.  *See ABA*, 636 F.3d at 648.  That conduct is now forbidden by section 103 of the USA FREEDOM Act, 50 U.S.C. § 1861(c)(3), which prohibits the issuance of FISC orders under Section 215 that authorize the collection of records "without the use of a specific selection term."  *See Klayman v. Obama*, 142 F. Supp. 3d 172, 177 (D.D.C. 2015) ("[T]he USA FREEDOM Act specifically prohibits the bulk collection of telephony metadata ….").[4]  So too regarding queries of the data, which are now prohibited by the order of

---

[3]  Plaintiffs concede that the second element required under the voluntary-cessation doctrine—that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," *Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016)—is met here.  *See* Pls.' Opp. at 14 ("The second element of voluntary cessation ... [is] also met by the passage of the Freedom Act ....").  But, even absent that concession, the second element would not be applicable here, where the Government Defendants have moved to dismiss as moot only Plaintiffs' claim for prospective injunctive relief (and their related declaratory judgment claim) and not Plaintiffs' claim for expungement of the remaining bulk data.  That latter claim is not moot, but it should be dismissed for the reasons set forth *infra*, at 9–12.

[4]  Plaintiffs assert in passing (without citation or evidence) that "there is a strong sentiment to repeal the USA FREEDOM Act," Pls.' Opp. at 1, but this stray remark is an insufficient basis on which to conclude that "a reasonable expectation of recurrence" of bulk collection exists.  *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997).  Instead of credible evidence that the USA FREEDOM Act is likely to be repealed, *see id.*, the bipartisan support for the Act, *see* https://judiciary.house.gov/issue/usa-freedom-act/, "evinces an intent to the contrary."  *Nat'l Black Police Ass'n*, 108 F.3d at 350.

an Article III court.  Nov. 24, 2015 FISC Order (Murphy Decl. Exh. B), at 6 ("[Q]ueries of the

[bulk telephony metadata] for the purpose of obtaining foreign intelligence information will no

longer be permitted."); *id.* at 9 (bulk telephony metadata "will not be accessed or reviewed by

analysts after November 28, 2015").  *See* Gov't Defs.' Mem. at 9-10; Murphy Decl. ¶¶ 17-18.

  Plaintiffs insist otherwise, however, arguing that the USA FREEDOM Act, which

categorically prohibits bulk collection of data under Section 215, is actually "riddled with

loopholes" that assertedly "allow the intelligence agencies to collect all kinds of personal data

without prior court approval."  Pls.' Opp. at 13, 26.  As evidence of these loopholes, Plaintiffs

cite only section 102 of the Act, codified at 50 U.S.C. § 1861(i), which provides that the

Attorney General may require the "emergency production" of documents or other tangible things

without a FISC order, for a period not to exceed seven days, if *inter alia* he "reasonably

determines that the factual basis for the issuance of a [FISC] order under [Section 215] to

approve such production … exists."  50 U.S.C. § 1861(i)(1)(B) & (3).  Among other pre-

requisites, a FISC order authorizing the ongoing production of call-detail records requires a

factual showing sufficient to support a reasonable belief that the specific selection term on which

production of the records will be based is associated with a foreign power, or an agent thereof,

engaged in international terrorist activity.  *Id.* § 1861(b)(2)(C) & (c)(1).  Consequently, the

Attorney General has no emergency authority to require bulk collection, only collection based on

specific selection terms that he reasonably determines are associated with foreign terrorist

activity—determinations that are subject, moreover, to mandatory review by the FISC.  *See id.*

§ 1861(i)(1)(D).  Thus, contrary to the conclusion reached by Plaintiffs, section 102 of the USA

FREEDOM Act does not silently usher in a new era of bulk collection that is elsewhere

categorically prohibited by the statute.  *See* USA FREEDOM Act § 103, 50 U.S.C. § 1861(c)(3);

*see also* Murphy Decl. ¶¶ 13-15.

**2.**      Plaintiffs next assert that the Government has engaged in a longstanding "pattern and practice of deception and disregard for the law" when conducting surveillance, creating a "reasonable probability" that the conduct challenged here will recur, as well as an "increased risk" of "future harm" from bulk collection that confers standing on them to seek injunctive relief.  Pls.' Opp. at 14, 15, 16-17.  These kindred arguments fail for a variety of reasons.

As a threshold matter, a threatened future injury must be "certainly impending" to satisfy Article III's standing requirement.  *See* Gov't Defs.' Mem. at 36–37 (quoting *Amnesty Int'l*, 133 S. Ct. at 1148); *see also, e.g.*, *Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016) ("Because [plaintiff] fails plausibly to allege that any future injuries are *'certainly impending* to constitute injury in fact,' he cannot rely on such injuries to establish Article III standing.").  Under D.C. Circuit precedent, the "increased risk" standard that Plaintiffs seek to invoke, *see* Pls.' Opp. at 9, applies only to claims of increased health or environmental risk, injuries that "often are purely probabilistic," *NRDC v. EPA*, 464 F.3d 1, 5–6 (D.C. Cir. 2006), as in *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996), the case upon which Plaintiffs rely.  "Outside of increased exposure to environmental [or health] harms," however, "hypothesized 'increased risk' has never been deemed sufficient 'injury.'"  *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005).  Since the injury alleged in this case fits neither of these categories, Plaintiffs must show that any alleged future harms are "certainly impending"— as this Court has previously determined.  *See Klayman*, 957 F. Supp. 2d at 8 n.6 ("certainly impending" standard is "squarely dictated by … *Amnesty International*"); *see also Obama v. Klayman*, 800 F.3d 559, 570 (D.C. Cir. 2015) (Sentelle, J.) (dissenting in part) (*Amnesty International's* "certainly impending" requirement is "fully applicable" to the instant case).

Furthermore, it is "well settled" that a court must "presume that government officials will conduct themselves properly and in good faith," *In re Navy Chaplaincy*, 850 F. Supp. 2d 86, 94

(D.D.C. 2012), and therefore that the Government Defendants will comply with a federal statute and court order prohibiting them from re-engaging in the challenged conduct.  Plaintiffs' refrain about a longstanding Government "pattern and practice of acting outside of the law," Pls.' Opp. at 14, cannot overcome this presumption, because their accusations are without basis in fact.

The principal incidents to which Plaintiffs refer concerned the NSA's "alert list" system used with the Section 215 program, and FISC concerns about the handling of multi-communication transactions acquired under NSA "upstream" surveillance on the Internet.  *See* Decl. of Teresa H. Shea, *Klayman I* ECF No. 25-4 ("Shea Decl."), ¶ 37; *[Redacted],* 2011 WL 10945618, at *6 & n.14 (F.I.S.C. Oct. 3, 2011); *Klayman*, 957 F. Supp. 2d at 18.  Both matters came to light as a result of NSA internal oversight and inter-agency reviews of the programs, and once discovered they were promptly reported to the FISC and Congress.  Shea Decl. ¶¶ 34-36, 41; *[Redacted]*, 2011 WL 10945618, at *2; *In re Prod. of Tangible Things from [Redacted]*, 2009 WL 9150913, at *2 (F.I.S.C. Mar. 2, 2009).  The incidents stemmed largely from human error and technological complexity, *see, e.g.*, Shea Decl. ¶ 38, and the FISC made no findings of intent by the Government to mislead the court or evade legal requirements.  In both cases the NSA also took prompt corrective action, after which the FISC reauthorized both programs.  Shea Decl. ¶¶ 29, 36, 40; *[Redacted]*, 2011 WL 10947772 (F.I.S.C. Nov. 30, 2011); *In re Application of the FBI*, 2009 WL 9150914 (F.I.S.C. Sept. 3, 2009).  Far from exhibiting deceit or disregard for the law, these episodes illustrate the great lengths to which the Government goes to detect, disclose, and correct its mistakes in implementing FISC-supervised intelligence programs.

Plaintiffs also cite a 2014 FISC opinion as evidence of "government lies" and "the lengths to which the intelligence agencies are willing to go to … destroy data that might be used as evidence of their illegal activities."  Pls.' Opp. at 2-3, citing *In re Application of the FBI*, No. BR 14-01, Op. & Order (F.I.S.C. Mar. 21, 2014) (Pls.' Opp., Exh. 1).  Again, the truth is

palpably to the contrary.  As is clear on the face of the FISC's opinion, the Government had

sought leave to *preserve* certain metadata that FISC orders required it to destroy, because of the

data's potential relevance in cases (including the cases at bar) challenging the Section 215

program.  *Id.*, Exh. 1, at 2-3.  When the FISC initially rejected that request, *id.* at 3-4, the

Government filed notices advising the plaintiffs in those cases (including Plaintiffs here) that it

would destroy the metadata in question, per FISC orders, absent a (district) court order to the

contrary.  *See id.* at 5; *Klayman I*, ECF No. 94 (Exh. 1, hereto).  When the plaintiffs in *Jewel* and

*First Unitarian* (*see* Gov't Defs.' Mem. at 6-7) sought and obtained an order prohibiting such

destruction, the Government so informed the FISC, and requested leave from the FISC to

maintain the bulk metadata at issue as the district court's order required.  *See* Pls.' Opp., Exh. 1,

at 5-6.[5]  Contrary to Plaintiffs' perverse mischaracterization of this event, it exhibits the

Government's due regard for its preservation obligations and the interests of plaintiffs in these

and other cases who desire preservation of the bulk data collected under Section 215.

     Moreover, so fixated are Plaintiffs on their own baseless accusations of Government

misconduct that they overlook an obvious fact.  Even if the Government decided to reinstate the

Section 215 program, it could not do so without FISC orders compelling telecommunications

service providers to produce telephony metadata to the NSA in bulk.  Yet as the FISC and this

Court have recognized, section 103 of the USA FREEDOM Act, 50 U.S.C. § 1861(c)(3),

---

[5]  The FISC questioned why the Government had not explained, when it first sought leave to retain these data, that the *Jewel* plaintiffs believed the data were relevant and subject to a pre-existing preservation order in their case.  *See* Pls.' Opp., Exh. 1, at 8-9.  As the Government later explained, based on the nature of the *Jewel* plaintiffs' claims it had always understood them to be limited to certain presidentially authorized intelligence-collection activities, and not to include FISA-based activities such as the Section 215 program (the existence of which was classified at the time the complaint was filed).  *In re: Application of the FBI*, ECF BR 14-01, Resp. of the U.S. to the Court's Mar. 21, 2014, Op. & Order (Apr. 2, 2014) (http://www.fisc.uscourts.gov/public-filings/governments-response-courts-march-21-2014-opinion-and-order); *see also* Gov't Defs.' Mem. at 7 n.6.

"clearly forecloses the issuance" of such orders.  Nov. 24, 2015 FISC Order, at 3; *Klayman*, 142

F. Supp. 3d at 177.  Regardless of Plaintiffs' expectations of the Government, they have made no

showing of a "reasonable probability" or "increased risk" (much less an impending certainty)

that the FISC would flout this express statutory restriction, as would be necessary for the harms

Plaintiffs fear to recur.  Plaintiffs' claims for declaratory and prospective injunctive relief against

the Section 215 program present no justiciable case or controversy, and must be dismissed.

### B.      Plaintiffs' Expungement Claim

Plaintiffs make no attempt to demonstrate their standing to seek the separate relief of

expungement—destruction of the bulk telephony metadata still retained by the NSA.  As

previously explained, the NSA continues to maintain these data, notwithstanding the termination

of the Section 215 program, solely to comply with evidence-preservation obligations (including

three preservation orders) in these cases and in other pending litigation.  The FISC's November

25, 2014, Order requires that the NSA destroy the bulk data once applicable preservation

obligations are lifted, while in the meantime forbidding all access to the data except technical

access to maintain data integrity (which involves no queries of the data).  *See generally* Gov't

Defs.' Mem. at 6-7, 9-10.[6]  Even assuming for the sake of argument that the NSA's ministerial

act of preserving the data inflicted a cognizable Article III injury on Plaintiffs, they still would

lack standing to litigate claims for expungement of the data against the Government Defendants,

---

[6]  In addition to the pending cases identified in the Government's initial memorandum, the bulk data retained by the NSA may also be subject to the Government's preservation obligations in military commission proceedings pending at the Guantanamo Bay Naval Station. In March and April 2014, defendants charged with conspiring to carry out the September 11, 2001, terrorist attacks on the United States moved for production of "[a]ll information pertaining to the [intelligence community's] monitoring or collection of information," assuming any, "regarding Defense team telephone numbers (metadata or actual content) including but not limited to [specified] numbers."  *See* Exhs. 2 & 3, hereto.  These motions remain pending. (Although filed in 2014, the motions did not come to the attention of the Government's counsel in these cases in sufficient time to address them in the Government's opening brief.)

because that injury would be solely attributable to Plaintiffs' own insistence, and that of other litigants, that the NSA retain the data as potentially relevant evidence in their cases.  *Id.* at 26-30.

Plaintiffs do not contest that conclusion or its premises.  To the contrary, they reaffirm that they "do not seek expungement" of any metadata pertaining to their calls until after "full and final resolution of all [their] claims set forth against all Defendants."  Pls.' Opp. at 15-16.  Thus, Plaintiffs not only reinforce the conclusion that their injury here, if any, is self-inflicted—and as such, not cognizable, *see* Gov't Defs.' Mem. at 28—they also expose their expungement claim itself as unripe for adjudication.

The ripeness doctrine "prevents courts from entangling themselves in abstract disagreements" by "ensur[ing] that courts make decisions only when they have to …."  *American Petroleum Inst. v. EPA ("API")*, 683 F.3d 382, 386, 387 (D.C. Cir. 2012).  A claim is unripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *In re Aiken Cty.*, 645 F.3d 428, 434 (D.C. Cir. 2011).  That is the case here, for by the time Plaintiffs' claims in this case have been fully and finally resolved, the NSA may well have been relieved of its preservation obligations in other fora, in which event the legal obstacles to the NSA's intended destruction of the data also will have been removed "without the need for judicial [intervention]" by this Court.  *API*, 683 F.3d at 388; *see Aiken*, 645 F.3d at 434.  Thus, if the Court "do[es] not decide the issue now, [it] may never need to."  *API*, 683 F.3d at 387.  Moreover, Plaintiffs' expungement claim presents a question of constitutional dimension—whether the Fourth Amendment guarantee against unreasonable searches and seizures includes a right to expungement.  Under related principles of constitutional avoidance, the Court must "avoid reaching [that] constitutional question[ ]" unless and until "the necessity of deciding [it]" arrives.  *In re Al-Nashiri*, 791 F.3d 71, 81 (D.C. Cir. 2015) (citing *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)).

In a remarkable exhibition of tortuous reasoning, Plaintiffs argue that for "compelling equitable reasons" they must be permitted to maintain an expungement claim against the Government Defendants to *prevent* the Government from expunging information, data they believe could support their claims against the individual defendants, whom the Court long ago dismissed.  Pls.' Opp. at 16.  This argument is laden with flaws.  Even assuming for the sake of argument that Plaintiffs managed to resurrect their claims against the individual defendants,[7] they cite no authority for the exceptional proposition that litigants having no cognizable Article III claim against one party may nevertheless subject that party to suit, as a matter of equity, to compel the preservation of evidence for a claim against a separate party.  A court "'has no authority to create equitable exceptions to jurisdictional requirements.'"  *Menominee Indian Tribe of Wisc. v. United States*, 614 F.3d 519, 524 (D.C. Cir. 2010) (quoting *Bowles v. Russell*, 551 U.S. 205, 214 (2007)).[8]  Neither Plaintiffs' insistence that metadata about their calls be

---

[7]  Plaintiffs state that they "will be moving the Court to allow [them] adequate time to personally serve the Individual Defendants, in their individual capacity …."  Pls.' Opp. at 10.  While these intentions are irrelevant to the Government's motion to dismiss, it is worth observing that any motion by Plaintiffs to reconsider the Court's September 20, 2016, decision dismissing the individual defendants would be extremely untimely.  As the Court remarked, after more than three years of litigation the Plaintiffs "ha[d] not offered any good reason for their delay in serving the individuals" personally, and it was "no solution" to "offer to 'again serve' [them] 'if the Court deems it necessary.'"  *Klayman I*, Mem. Order, ECF No. 175, at 3-4.  These observations—and the Court's decision—are all the more valid now, as yet another four months have passed without proper service on the individual defendants, without a motion by Plaintiffs to reconsider the Court's ruling, or for more time to complete such service, and without Plaintiffs offering "any good reason for their delay."  *Id.* at 3.  The Court thus need not, and should not, revisit the Plaintiffs' defunct individual-capacity claims.

[8]  Plaintiffs also overlook that the other cases for which the NSA is preserving bulk data are all matters of public record, and their status can be monitored, and so, too, the Government's preservation obligations, via their online public dockets.  Should those preservation requirements be lifted in all of these matters while Plaintiffs are still pursuing (presently hypothetical) claims against the individual defendants, then Federal Rule of Civil Procedure 45 would provide an avenue for ensuring continued preservation of any metadata about Plaintiffs' calls.  *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (holding that service of a Rule 45 subpoena triggered a non-party's duty to preserve responsive documents).

preserved for now, nor their insistence that the data be destroyed later on, serves as a basis for maintaining their expungement claim against the Government.

### C.    Plaintiffs Are Not Entitled to Jurisdictional Discovery.

Plaintiffs argue alternatively that before their claims implicating the Section 215 program can be dismissed, they must be afforded the opportunity to conduct discovery as to whether the NSA's collection of bulk telephony metadata included information about their calls.  Pls.' Opp. at 17-18; *see id.* at 6-7.  But the jurisdictional hurdles to litigation of Plaintiffs' claims attacking the Section 215 program are not dependent on whether the NSA previously collected metadata about their calls.  For this and other reasons discussed below, the jurisdictional discovery requested by Plaintiffs would be futile, and therefore should be denied.

A district court has "broad discretion to allow or disallow [jurisdictional] discovery." *Duarte v. Nolan*, 190 F. Supp. 3d 8, 15 (D.D.C. 2016).  Although the "standard for permitting jurisdictional discovery is quite liberal," *NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 741 F. Supp. 2d 55, 60 (D.D.C. 2010), a "generalized request for jurisdictional discovery" is "not sufficient," *Orellana v. CropLife, Int'l*, 740 F. Supp. 2d 33, 40 (D.D.C. 2010).  Nor is a "request for jurisdictional discovery [that is] based on mere conjecture or speculation." *FC Invest. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008).  Jurisdictional discovery is not permitted when it amounts to no more than a "fishing expedition." *See Williams v. Romarm, SA*, 756 F.3d 777, 786 (D.C. Cir. 2014); *In re Papst Licensing, GmbH & Co. KG Litig.*, 590 F. Supp. 2d 94, 101 (D.D.C. 2008).

Instead, to obtain jurisdictional discovery, litigants must "demonstrate[] that [they] can supplement [their] jurisdictional allegations through discovery," *Shaheen v. Smith*, 994 F. Supp. 2d 77, 89 (D.D.C. 2013), by making a "detailed showing of what discovery [they] wish[] to conduct or what results [they] think[] such discovery would produce." *Atlantigas Corp. v.*

*Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003).  This showing "must include *some* facts about what additional discovery could produce" to establish jurisdiction.  *Shaheen*, 994 F. Supp. 2d at 89.  Where no such detailed showing is made, it is "inappropriate to subject [defendants] to the burden and expense of discovery" before dismissal is granted on jurisdictional grounds.  *Id. See also Baptist Mem. Hosp. v. Johnson*, 603 F. Supp. 2d 40, 44 (D.D.C. 2009).

Plaintiffs have not made the required showing that allowing discovery could lead to facts establishing jurisdiction over their challenges to the Section 215 program.  Plaintiffs have specified the discovery they wish to pursue—"whether their metadata [*sic*] was collected," Pls.' Opp. at 6; *see also id.* at 17-18—but the jurisdictional defects that prevent adjudication of their claims do not turn on whether the NSA previously collected metadata about their telephone calls or not.  Plaintiffs' claims for declaratory and injunctive relief concerning the collection and querying of bulk telephony metadata are now moot, and Plaintiffs lack standing to seek such relief, regardless of whether the NSA collected records about Plaintiffs' telephone calls when the program was still in operation.  Both the lack of injury currently traceable to the Government's conduct, and the ripeness doctrine, bar adjudication of Plaintiffs' expungement claim regardless of whether the NSA actually possesses records about Plaintiffs' calls collected under the program.  Indeed, as the Government previously observed, Plaintiffs' legal challenges to the Section 215 program no longer present an Article III case or controversy even assuming for the sake of argument that the NSA collected bulk metadata about *all* the Plaintiffs' calls, not simply the Little Plaintiffs' calls.  Gov't Defs.' Mem. at 21.  Discovery seeking evidence that would do nothing more than turn that assumption into an identical fact can produce no results of jurisdictional significance.  *Atlantigas Corp.*, 290 F. Supp. 2d at 53.

Discovery also holds out no meaningful promise of establishing the Court's jurisdiction because the discovery that Plaintiffs envision concerns the operational details of classified NSA

intelligence-gathering activities, information that is protected from disclosure by law.  Section 6
of the National Security Agency Act provides (with a narrow exception not pertinent here) that
"nothing in this chapter [Title 50, U.S.C., ch. 47] or any other law … shall be construed to
require the disclosure of … any function of the [NSA], or any information with respect to the
activities thereof …."  50 U.S.C. § 3605(a).  Congress thus enacted "a statutory privilege, unique
to the NSA," *Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009), affording "absolute"
protection to information about NSA intelligence programs.  *Linden v. NSA*, 94 F.3d 693, 698
(D.C. Cir. 1996).  Discovery for the purpose of ascertaining whether the NSA obtained data
about Plaintiffs' telephone calls would necessarily contemplate access to information about NSA
intelligence-collection activities, and would be unconditionally barred by Section 6.

In addition, attempts by Plaintiffs to discover whether "*their* metadata [*sic*] was
collected" predictably would involve inquiries into NSA sources and methods, including the
identities of telecommunications service providers that participated in the Section 215 program.
*See Klayman*, 142 F. Supp. 3d at 185-89.  It is well-established that whether or not particular
individuals or entities have been targets or subjects of intelligence-gathering activities, or
assisted in those activities, are matters over which the Government may legitimately assert the
state secrets privilege, and otherwise protect from disclosure in the interests of national security.
*See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1086 (9th Cir. 2010); *Al-Haramain
Islamic Found., Inc. v. Bush* , 507 F.3d 1190, 1202-03 (9th Cir. 2007); *Halkin v. Helms,* 690 F.2d
977, 993 & n. 57 (D.C. Cir. 1982); *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1979).  *See also
CIA v. Sims*, 471 U.S. 159, 161-62, 173-74 (1985); *Salisbury v. United States*, 690 F.2d 966, 971
(D.C. Cir. 1982); *ACLU v. Brown*, 619 F.2d 1170, 1173 (7th Cir. 1980) (*en banc*); *Electronic
Frontier Found. v. Dep't of Justice*, 2014 WL 3945646, at *5-7 (N.D. Cal. Aug. 11, 2014).  For
these reasons as well, attempts to conduct the jurisdictional discovery that Plaintiffs have

described, and the burden, expense, and delay those attempts would entail, would most likely result only in futility, and should not be allowed.  *See Baptist Mem. Hosp.*, 603. F. Supp. 2d at 44.  Instead, Plaintiffs' claims challenging the Section 215 program should be dismissed.[9]

## II.   PLAINTIFFS LACK STANDING TO CHALLENGE THE NSA'S PRIOR BULK COLLECTION OF INTERNET METADATA.

The Government Defendants have previously explained that Plaintiffs also lack standing to challenge the NSA's discontinued bulk Internet-metadata program, for two independent reasons.  First, the NSA ceased FISC-authorized bulk collection of Internet metadata under FISA Section 402, and destroyed the accumulated metadata, in December 2011—about one and one-half years before Plaintiffs first sought to mount a legal challenge to that program in *Klayman II*. *See* Gov't Defs.' Mem. at 31-32.  Thus, the Court can offer them no relief on this claim, and it accordingly presents no case or controversy.  Second, even if the bulk Internet-metadata program remained operational at the time of Plaintiffs' suit, they cannot establish standing to contest its legality because they have presented no meaningful allegations or evidence about the nature, scope, or scale of the program to support a conclusion that bulk collection of metadata concerning Plaintiffs' online communications has occurred, or is imminently likely.  *Id.* at 32-33.

---

[9]  Plaintiffs allude to *in camera* review of classified evidence as an alternative to discovery that could mitigate concerns about harmful disclosures of national-security information.  Pls.' Opp. at 17; *id.* at 5-6.  That proposal is foreclosed by the Supreme Court's decision in *Amnesty International*.  There, too, it was suggested that the Government disclose evidence regarding the plaintiffs' standing "through an *in camera* proceeding," but the Supreme Court flatly rejected the idea, remarking that it was "[plaintiffs'] burden to prove their standing by pointing to specific facts … not the Government's burden to disprove standing by revealing details of its surveillance [activities]."  133 S. Ct. at 1149 n.4.  Moreover, the Court observed, a "postdisclosure decision" about whether the plaintiffs had standing or not would effectively result in harmful disclosures of the very national-security information that the *in camera* proceeding was meant to protect.  *See id.*  The same reasoning applies here and bars *ex parte* review of classified information for the purpose of ascertaining whether the NSA's bulk collection of telephony metadata included records about Plaintiffs' calls (which, as discussed above, would not cure the jurisdictional defects in Plaintiffs' claims, in any event).

As to the first ground, the Government Defendants have provided sworn evidence—in the form of the Murphy Declaration—that the bulk collection of Internet metadata under FISA Section 402 ended in 2011, and the data collected pursuant to the program were destroyed.  *See* Murphy Decl. ¶ 21.  Under Rule 12(b)(1), now that the Government has introduced evidence showing that the Court lacks subject matter jurisdiction over their claims, Plaintiffs "bear[ ] the burden of proving by a preponderance of the evidence that the [C]ourt has subject matter jurisdiction to hear the case."  *Harris v. Koenig*, 722 F. Supp. 2d 44, 49 (D.D.C. 2010).[10]

Plaintiffs have not carried that burden here.  They apparently concede that if the FISC-authorized bulk collection of Internet metadata ended in 2011 and the data were expunged, then they lack standing to seek to enjoin this discontinued program or to seek expungement of the nonexistent data.  *See* Pls.' Opp. at 19.  They argue, however, that the Government's sworn declaration attesting that the program was in fact discontinued in 2011 is not to be believed in light of the NSA's "history of deceit … and lawless conduct."  *See id.*  Such blanket assertions of dishonesty are not sufficient to defeat dismissal in the face of a well-supported Rule 12(b)(1) motion, especially given that they do nothing to bring Mr. Murphy's specific statements about the bulk Internet metadata program into legitimate question.  *See Colwell v. HHS*, 558 F.3d 1112, 1121 (9th Cir. 2009) ("In support of a motion to dismiss under Rule 12(b)(1), the [movant] may submit 'affidavits or any other evidence properly before the court … It then becomes necessary for the [opposing party] to present affidavits or any other evidence necessary to satisfy its burden

---

[10]  *See also In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1442-43 (D.C. Cir. 1989) (holding that Rule 12(b)(1) motions should be resolved by "look[ing] to the [summary judgment] standard of Rule 56 ... for guidance."); Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact … is genuinely disputed must support the assertion by … citing to particular parts of materials in the record[.]"); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

of establishing that the court, in fact, possesses subject matter jurisdiction.'" (citation omitted));

*cf. Mason v. Geithner*, 811 F. Supp. 2d 128, 174 (D.D.C. 2011) ("Conclusory assertions offered

without any factual basis in the record cannot create a genuine dispute sufficient to survive

summary judgement."). Moreover, as discussed above, Plaintiffs' allegations regarding a

"history of deceit" about NSA intelligence programs are completely unfounded.[11]

Likewise, Plaintiffs' factually untethered allegations of Government deceit do not support

their request for jurisdictional discovery. Plaintiffs have the burden of plausibly demonstrating

that discovery would allow them to prove jurisdiction, by making a "detailed showing" of what

facts supporting jurisdiction such discovery would produce. *See Atlantigas Corp.*, 290 F. Supp.

2d at 53; *Shaheen*, 994 F. Supp. 2d at 89. Plaintiffs' flat assertion that discovery would show the

Murphy Declaration to be false is "mere conjecture or speculation" and does not satisfy the

standard for granting jurisdictional discovery. *See FC Invest. Group LC*, 529 F.3d at 1094.[12]

Similarly, Plaintiffs do not meaningfully address the second and independent ground for

dismissing their claims regarding bulk Internet metadata collection—their failure to present any

---

[11]  Plaintiffs also argue that the Murphy Declaration should be disregarded because it
contains information outside the scope of Mr. Murphy's personal knowledge. Pls.' Opp. at 19.
It is well-established, however, that government officials may testify to indirect knowledge about
government operations acquired in the course of performing their official duties, *see, e.g.*,
*Calvert v. United States*, 662 F. Supp. 2d 27, 31 (D.D.C. 2009), and there is no reason to doubt
that Mr. Murphy, as NSA Director of Operations, possesses reliable information about the
history and current status of the bulk Internet metadata program. *See* Murphy Decl. ¶¶ 1-2.

[12]  Plaintiffs also invoke the voluntary-cessation doctrine. Pls.' Opp. at 19. But, as noted
above and in the Government's opening brief, voluntary cessation is an exception to the
mootness doctrine, and mootness and its exceptions do not apply here because the bulk Internet
metadata program ceased before the *Klayman II* Plaintiffs filed their complaint. *See* Gov't Defs.'
Mem. at 32 n.14. Moreover, as with the Section 215 telephony metadata program, the voluntary-
cessation exception would not otherwise be applicable here: there is no "reasonable expectation"
that the NSA will again engage in bulk collection of Internet metadata because such collection is
now forbidden by the USA FREEDOM Act. *See* Pub. L. No. 114-23, § 201, 129 Stat. 268
(2015), codified at 50 U.S.C. § 1842(c)(3).

evidence that information about their online communications was in fact collected under that program.[13]   Plaintiffs argue that data about their communications must have been collected because the Section 402 program admittedly operated on a "very large scale," Pls.' Opp. at 20, but the D.C. Circuit specifically rejected that inference in the context of the Section 215 program, concluding that the mere fact that the program collected a large quantity of data did not alone support the conclusion that data about Plaintiffs' telephone calls were obtained.   *See Klayman*, 800 F.3d at 565-66 (Williams, S.J.); *see id.* at 569 (Sentelle, J.) (dissenting in part). The same reasoning applies here and is controlling.   Plaintiffs' mere use of the Internet during the period of the program's operation, despite its "very large" but unspecified scale, does not establish that metadata about their communications were collected.   Thus they have failed to show standing to pursue relief based on the NSA's past bulk collection of Internet metadata.[14]

Accordingly, Plaintiffs lack standing to seek declaratory or injunctive relief against the discontinued bulk Internet-metadata program, or the expungement of data already destroyed more than five years ago, and their claims seeking such relief should be dismissed.

---

[13]   Plaintiffs' argument that they have standing to challenge this program based on the identities of the individuals with whom they communicated misses the mark, *see* Pls.' Opp. at 20; *see id.* at 10-12, because Internet metadata was collected under Section 402 in "bulk," meaning that the initial collection (as distinguished from ensuing queries and analysis of the data) was not targeted at particular individuals or selectors.  *See, e.g.*, Murphy Decl. ¶¶ 5, 14, 23 (distinguishing bulk collection from targeted collection programs).

[14] Plaintiffs also argue that, regardless of whether they have standing to attack the NSA's past collection of bulk Internet metadata, they nonetheless have standing to seek prospective injunctive relief because of a reasonable probability that the program will be reinstituted and data about their communications collected in the future.  An alleged future injury, however, must be "certainly impending" to establish standing.  *Amnesty Int'l*, 133 S. Ct. at 1143.  And Plaintiffs clearly have not established with any certainty that bulk Internet metadata collection will be reestablished, much less that data about their communications will be collected, particularly when the question is viewed in light of the USA FREEDOM Act's prohibition of such bulk collection under Section 402.  *See* Pub. L. No. 114-23, § 201, 129 Stat. 268 (amending FISA Section 402 to prevent its use to collect information in bulk); 50 U.S.C. § 1842(c)(3).

### III.   PLAINTIFFS LACK STANDING TO CHALLENGE PRISM COLLECTION.

Unlike the Section 215 program, and bulk collection of Internet metadata, PRISM is an ongoing program of targeted communications collection, conducted under FISA Section 702, 50 U.S.C. § 1881a, in which the NSA obtains online communications containing selectors, such as e-mail addresses, that are associated with certain non-U.S. persons located outside the United States, such as members of foreign terrorist organizations, who are likely to possess, receive, or communicate foreign-intelligence information.  *See* Murphy Decl. ¶¶ 22-26.  As the Government has explained, and as the Court previously concluded, Plaintiffs cannot establish their standing to challenge PRISM when they do nothing more than make speculative allegations that their electronic communications have been, or imminently will be, targeted for collection under this program.  *See* Gov't Defs.' Mem. at 33-38; *Klayman*, 957 F. Supp. 2d at 8 n.6.  Neither of the two basic arguments that Plaintiffs advance in response give reason to reconsider this conclusion.

First, Plaintiffs assert that, rather than making speculative allegations, they have "pled specific facts that strongly support [their] contention that their [communications] [have been] collected under the PRISM Program, and that [they] remain[ ] substantially at risk of such collection."  Pls.' Opp. at 22.  In particular, Plaintiff Klayman alleges that he has communicated by e-mail and other means with specific political figures in Israel, a "high-conflict area," who "almost certainly" have been "target[s] of the PRISM Program," *id.* at 22-23; the Strange Plaintiffs "specifically allege" that they engage in international electronic communications and "have received threatening e-mails and texts from overseas," specifically Afghanistan, an "indisputabl[e] …'hot-bed' for terrorist activity," *id.* at 23; and the remaining Plaintiffs simply allege generally that they engage in international electronic communications, *id.* at 12.  Plaintiffs contend that these "specific details" amount to "far more than mere 'speculation'" and "can only lead to the conclusion that their metadata [*sic*] was collected" under PRISM.  *Id.* at 23.

To the contrary, Plaintiffs' lack of standing to challenge PRISM is, as this Court previously observed, "squarely dictated by" the Supreme Court's decision in *Amnesty International*. *See Klayman*, 957 F. Supp. 2d at 8 n.6. There, as the Government Defendants have previously explained, *see* Gov't Defs.' Mem. at 36-37, the Supreme Court rejected the argument that the plaintiffs could establish their standing to challenge Section 702 surveillance based on their communications with persons overseas whom they deemed "likely targets" of Government surveillance due to the nature of their activities and their geographical location. *See Amnesty Int'l*, 133 S. Ct. at 1145-50. Plaintiffs advance essentially the same argument here. *See* Pls.' Opp. at 10-12, 23. Indeed, their general allegations that they engage in international electronic communications, or that they do so with unidentified persons in countries that are "hot-bed[s]" for terrorist activity, *id.* at 11-12, 23, fall short even of the factual assertions that the Supreme Court rejected as inadequate in *Amnesty International*.[15]

To a somewhat greater degree of specificity, Plaintiff Klayman has identified some of his international online correspondents, *id.* at 10, 23, but that is of no consequence. Plaintiffs' claims in *Amnesty International* were rejected as too speculative because the plaintiffs had "no actual knowledge" of the Government's "targeting practices," and so could only "speculate and make assumptions about whether their communications" with specific persons would be acquired. *See Amnesty Int'l*, 133 S. Ct. at 1148. So too here. The identities of PRISM targets are classified, *see* Murphy Decl. ¶ 27, and Plaintiff Klayman's assertions that his correspondents

---

[15] And unlike the plaintiffs in *Amnesty International,* who submitted evidence to support their jurisdictional claims, *see* 133 S. Ct. at 1146, 1148, Plaintiffs here submit no evidence in response to the Government's factual challenge to their standing. *See* Pls.' Opp. at 22-23 (relying on complaints' allegations). Their "jurisdictional averments [in pleadings] are entitled to no presumptive weight." *Flores v. Dist. of Columbia*, 437 F. Supp. 2d 22, 29 (D.D.C. 2006).

are among those targeted for Government surveillance "are necessarily conjectural." *Amnesty Int'l*, 133 S. Ct. at 1149.  And *Amnesty International* teaches that this is insufficient.[16]

Oddly, Plaintiffs try to evade the same fate as the plaintiffs in *Amnesty International* by relying on the dissent, maintaining that they have standing to challenge PRISM collection based on the same sort of "commonsense inferences" that the dissent would have held sufficient in that case.  Pls.' Opp. at 25.  To state the obvious, the majority did not find those inferences sufficient, and instead rejected them as too speculative to support the plaintiffs' standing.  *Amnesty Int'l*, 133 S. Ct. at 1148-49.  To equate the inferences that Plaintiffs rely on here with those drawn by the dissent in *Amnesty International* necessarily dooms Plaintiffs' standing arguments.  *See Klayman*, 800 F.3d at 566-68 (Williams, S.J.) (concluding that *Amnesty International* "cut[] strongly against" a finding of standing where Plaintiffs' proffered inference based on the scope of the Section 215 program was "no stronger" than the inferences rejected in *Amnesty International*); *id.* at 569 (Sentelle, J.) (dissenting in part) (Supreme Court's "recent evaluation of comparable inferences" "cuts … out altogether" Plaintiffs' ability to establish their standing).

Second, Plaintiffs take aim at what they consider to be an "inherent flaw" in the Government Defendants' position:  that the classification of PRISM targets' identities allows the Government to "escape liability for [its] illegal activities" by depriving Plaintiffs of evidence needed to establish their standing.  *See* Pls.' Opp. at 23.  This same line of argument was

---

[16]  Because the plaintiffs in *Amnesty International* sought to establish their standing based on assertions of future injury, Plaintiffs argue that the Government Defendants' reliance on that case for allegations of past and ongoing injuries is "entirely misplaced."  Pls.' Opp. at 24. But Plaintiffs' jurisdictional allegations—as to past, ongoing, and future putative injuries—are all equally as speculative regardless of when the injury allegedly occurred, or allegedly will occur.  Relatedly, as to future injuries, Plaintiffs claim that the "proper inquiry" is not whether those injuries are "certainly impending," as the Supreme Court articulated it in *Amnesty International*, but rather whether there is a "'reasonable probability' that the harm will occur." Pls.' Opp. at 25.  As already shown, Plaintiffs are wrong on that point of law.  *See supra*, at 6.

21

advanced, and rejected, in *Amnesty International*.  There the plaintiffs suggested that a decision

rejecting their standing would "insulate" the Government's surveillance activities "from

meaningful judicial review."  *Amnesty Int'l*, 133 S. Ct. at 1154.  The Supreme Court found this

suggestion "both legally and factually incorrect."  *Id.*  As a legal matter, the Court held that the

"assumption that if [plaintiffs] have no standing to sue, no one would have standing, is not a

reason to find standing."  *Id.; see also Klayman*, 800 F.3d at 567-68 (Williams, S.J.) (rejecting

the argument that "the government should not be allowed to avoid liability simply by keeping the

material classified" because the "government's silence" is "a feature of the program, not a

bug").[17]  And, as a factual matter, it is not correct that the Government's surveillance activities

under Section 702 are insulated from judicial review.  The Supreme Court observed that under

Section 702, the authority under which PRISM operates, "Congress created a comprehensive

scheme in which the [FISC] evaluates the Government's certifications, targeting procedures, and

minimization procedures—including assessing whether the targeting and minimization

procedures comport with the Fourth Amendment."  *Amnesty Int'l*, 133 S. Ct. at 1154.  Moreover,

as the Supreme Court noted, criminal defendants who receive notice that evidence derived from

Section 702 surveillance has been used against them can challenge the legality of the acquisition.

*See id.*  The Ninth Circuit recently decided just such a case.  *See United States v. Mohamud*, 843

F.3d 420, 431, 436, 438, 444 (9th Cir. 2016) (holding that the acquisition of certain

communications pursuant to NSA PRISM collection "did not violate the Fourth Amendment").

Accordingly, Plaintiffs' claims challenging PRISM collection should be dismissed for

lack of standing.

---

[17]  Plaintiffs remark that the "Government Defendants['] refusal to share this [classified]
information, even with this Court, is highly compelling evidence of their bad-faith."  Pls.' Opp.
at 24.  But, as noted *supra*, at 15 n.9, *Amnesty International* forecloses that approach to deciding
the issue of standing in situations where classified evidence is involved.

## IV.    SOVEREIGN IMMUNITY BARS PLAINTIFFS' DAMAGES CLAIMS AGAINST THE GOVERNMENT.

The Government Defendants explained previously that sovereign immunity bars Plaintiffs' remaining "*Bivens*" claims for damages against the Government Defendants.  *See* Gov't Defs.' Mem. at 38–40.  Plaintiffs do not contest this conclusion, offering only the tautological non-sequitur that sovereign immunity would not bar their constitutional tort claims against the *individual* defendants (had they not already been dismissed).  Pls.' Opp. at 26.  Although recent decisions by the D.C. Circuit suggest that a court should not treat dispositive arguments as conceded solely because the nonmoving party failed to respond to them, *see Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506 (D.C. Cir. 2016), *and Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 484 (D.C. Cir. 2016),[18] they also make clear that a court should assess the merits of the moving party's arguments, and enter judgment based on those arguments where appropriate.  *See Winston & Strawn, LLP*, 843 F.3d at 508; *Cohen*, 819 F.3d at 482–83.  Here, the sovereign immunity arguments raised by the Government are plainly meritorious, *see* Gov't Defs.' Mem. at 38-40 (citing authorities), and Plaintiffs' claims for damages against the Government must be dismissed for lack of subject-matter jurisdiction.

---

[18]  It is not clear that the reasoning of those cases would apply to a motion brought under Rule 12(b)(1), such as the Government Defendants' motion here.  *Winston & Strawn* and *Cohen* dealt, respectively, with whether motions under Rule 56 and Rule 12(b)(6) may be treated as conceded if the nonmoving party fails to respond.  In holding that the entry of summary judgment or dismissal with prejudice was not appropriate, the Court of Appeals expressed concerns that such a result, in both cases, effectively shifted the burden from the moving party, to the nonmoving party, contrary to the framework of Rules 56 and 12(b)(6).  *See Winston & Strawn, LLP*, 843 F.3d at 505, 507; *Cohen*, 819 F.3d at 481.  By contrast, the burden of establishing jurisdiction already rests with the plaintiff, and, thus, treating an unanswered argument in a motion to dismiss under Rule 12(b)(1) as conceded by a plaintiff would not raise the same concerns about burden-shifting.

## CONCLUSION

For the reasons set forth above, and in the Government Defendants' opening brief,

Plaintiffs' claims in *Klayman I* and *Klayman II* should be dismissed for lack of subject matter

jurisdiction.[19]


Dated:  February 10, 2017


Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

*/s/ James. J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
Senior Counsel

JULIA A. BERMAN
CAROLINE J. ANDERSON
TIMOTHY A. JOHNSON
Trial Attorneys

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 6102
Washington, D.C.  20001
Phone:  (202) 305-7919
E-mail:  james.gilligan@usdoj.gov

*Counsel for the Government Defendants*

---

[19]  Also fully briefed and ready for decision is the Government Defendants' motion to dismiss the complaint in *Klayman III*, as well as the motion of the individual-capacity defendants in *Klayman III* to dismiss for lack of service of process.  *See* Gov't Defs.' Mem. at 15 n.9.